**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| TES FRANCHISING, LLC, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| vs. | : | NO. 10-0017 |
| | : | |
| J. ERIC DOMBACH, et al., | : | |
| Defendants, | : | |
| vs. | : | |
| | : | |
| TERRY POWELL, et al., | : | |
| Additional Defendants. | : | |

_____:

HENRY S. PERKIN                                                         OCTOBER 7, 2010

UNITED STATES MAGISTRATE JUDGE

**MEMORANDUM**

Presently before the Court is Plaintiffs' Motion for Preliminary Injunction. For

the reasons that follow, the Motion will be denied.

## I.     BACKGROUND, PROCEDURAL HISTORY AND FINDINGS OF FACT.[1]

The Plaintiffs in this class action brought on behalf of 370 business coaching

franchisees and four franchisors are TES Franchising, LLC, AdviCoach Franchising, LLC,

Business Partners Franchising, LLC, ERC Franchising, LLC ("Franchisor Plaintiffs" or "FSBI")

and Steven Schick.  FSBI is a fictitious business name for the Franchisor Plaintiffs which are

---

[1]     This information is taken from the Amended Complaint and the Affidavit of Terry Powell.  Pls.'
Ex. 9.

each wholly owned by Mr. Terry Powell and operate from the same location in Southbury, Connecticut. The 370 business coaching franchisees are Regional Developer and Single Unit franchisees under one or more of the following FSBI brands: The Entrepreneur's Source® ("TES"), AdviCoach®, Business Partner One-Stop Marketing® and Expense Reduction Consulting® ("ERC"). Each Franchisee Plaintiff has made a monetary investment between $68,000 and $272,000 or more to purchase a franchise system, including trade secrets, confidential and proprietary information, methods, procedures, standards and specifications for the operation of a franchised business.

Defendants are J. Eric Dombach ("Eric Dombach"), his wife Deborah M. Dombach, C. Michael Cody ("Michael Cody"), Coach Success Center, LLC ("CSC"), Good Life Marketing, LLC ("GLM"), Business Action, Inc. d/b/a My Coaches Coach ("BAI" or "MCC") and Team Synergy, LLC ("Synergy") (collectively "Defendants"). From 2001 to 2005, Eric Dombach was a business coaching franchisee with Action International. He later sold this franchise to Lancaster Coaching Practice, LLC. On August 29, 2003, Eric Dombach founded The Coach Success Center ("CSC"), a telemarketing marketing company. At the time CSC was formed, Donald Schin was company President. On November 2, 2006, Eric Dombach purchased 34% of the company stock from Donald Schin and became 83% owner and President of CSC. On February 24, 2008, Eric Dombach purchased the remaining 17% and became 100% owner of CSC.

The parties disagree as to the genesis of the relationship between Terry Powell as FSBI and Eric Dombach. According to Powell, Dombach approached him in January 2008 to promote the services of CSC and Dombach was required to execute a Non-Disclosure Agreement

("NDA") agreeing to keep all confidential and proprietary information and trade secrets received from FSBI in trust. Pls.' Ex. 9, p. 3 ¶¶ 9-10. Eric Dombach, as President of CSC, executed the NDA with FSBI on February 6, 2008. Pls.' Ex. 17. According to Powell, Eric Dombach was aware at the time he executed the NDA that FSBI was a fictitious business name representing the collective Franchisor Plaintiffs and that services provided by CSC would be for all four Franchisor Plaintiffs. Pls.' Ex. 9, p. 4 ¶¶ 23, 24. Eric Dombach became an employee, specifically an Executive Strategist for FSBI, on the payroll of TES Franchising, LLC on April 7, 2008. Id. at 5 ¶¶ 34, 38. In his capacity as Executive Strategist, Dombach obtained access to all trade secrets, confidential and proprietary information and policies and procedures of FSBI including but not limited to training methods, business coaching techniques, franchise communications systems, databases, address lists, customer contact procedures, franchisee revenue, service sales techniques, and all other information in the franchise systems including FSBI's Discovery Process. Id., ¶ 38.

Prior to his employment, Eric Dombach informed Terry Powell that he was servicing three to four existing business coach clients and he wished to continue serving those clients while he was an employee of FSBI, but he would not add more private clients. Id., ¶ 35. Powell agreed that Dombach could continue servicing the clients with whom he was then engaged, but not add more to his private practice. Id., ¶ 36.

On March 1, 2009, Dombach approached Powell and sought to terminate his employment with TES in order to avoid losing payments made to him by Lancaster Coaching Practice, LLC, the company to which he had sold his Action International coaching franchise and with which Dombach had a non-compete agreement which prevented Dombach from placing

franchisees in the Commonwealth of Pennsylvania.  Id. at 6, ¶¶ 39-41.  On April 2, 2009,

Dombach asked that his position change and sought consideration as an independent contractor

to FSBI because he represented that this arrangement would not violated his non-compete

agreement with Lancaster Coaching Practice, LLC.  Id., ¶¶ 42-43.  Dombach informed Powell

that he intended to continue to provide coaching to individuals engaged in the practice of

business coaching, and Powell agreed on May 4, 2009 to allow Dombach to become an

independent contractor for FSBI and to continue coaching existing business coaches.  Id. at 6, ¶

49; 9 at ¶ 62.  Powell advised Dombach that as consideration for his continued engagement with

FSBI, it would be necessary for Dombach to continue to abide by the confidentiality provisions

in the NDA he executed as President of CSC on February 6, 2008 and the confidentiality and

work-product provisions contained in the Employee Handbook he received on April 10, 2008 as

if he were an FSBI franchisee.  Id., ¶ 48.

On November 30, 2009, FSBI issued an Employee Warning Notice to Eric

Dombach because it was aware that Dombach was using AdviCoach tools and materials, had

established a website, www.thecoachescoach.com and was marketing his services as a "coaches'

coach."  Id., ¶¶ 56-58.  In the November 30 warning, Powell instructed Dombach to cease his

competitive activities and close down his website, www.thecoachescoach.com.  Dombach did as

requested with respect to the website.  Id. at 9, ¶ 60.  On December 3, 2009, Dombach resigned

his position as Executive Strategist for FSBI and sent a blast email to numerous Regional

Developer and Single Unit franchisees announcing his resignation and stating that he had been

expanding his private coaching practice during his tenure at FSBI.  Id., ¶¶ 64-65.   On December

17, 2009, Terry Powell was notified by Mark Elson of a telephone conversation he had with Eric

4

Dombach in which Dombach stated he was opening a competing business that would provide the same support and services to individuals seeking to become business coaching franchisees that FSBI provides to those individuals.  Id., ¶ 66.

On December 29, 2009, an internet search for www.mycoachescoach.com resulted in a webpage for My Coaches' Coach which identified Eric Dombach and Michael Cody as co-founders of My Coaches' Coach and Eric Dombach as a former AdviCoach employee.  The website was shut down later in the day on December 29, 2009.  Id. at 10, ¶¶ 67-70.  A search for the same site resulted in a web page for My Coaches' Coach on January 5, 2010.  Id., ¶ 71.  The website offers franchisor-like services to individuals interested in becoming business coaches similar to the services provided by FSBI to its franchisees and offers services in three packages, basic, middle and premium packages that offer different levels of services which appear identical to the types of services provided by FSBI to its franchisee candidates.  Id., ¶¶ 72, 73.   The website also contains videos of Eric Dombach who makes statements about his work for FSBI and the ability of a user to purchase an online e-book entitled The 2010 Business Coaches Franchise Buyers Guide ("2010 Buyer's Guide") for $97.00.  Id., ¶¶ 74, 75.

Plaintiffs purchased the book and contend that it contains confidential internal communications and a description of the FSBI Discovery Process and numerous inaccurate, misleading and false statements regarding the FSBI franchise system.  Id., ¶ 77.  In December 2009 and early February 2010, the website also contained a biographical sketch of Eric Dombach in which he refers to FSBI's AdviCoach® brand and an audio recording on the website also referenced AdviCoach® and Dombach's employment by FSBI.  Id. at 11 ¶¶ 81, 82.

No one from FSBI was aware of Eric Dombach's transfer of CSC to Good Life Marketing, LLC, a company owned by Deborah M. Dombach, until February 2010. <u>Id.</u> at 5 ¶ 33.

On January 4, 2010, Plaintiffs filed a ten count complaint asserting claims for (1) breach of non-disclosure agreement against Eric Dombach; (2) breach of confidentiality agreement against Eric Dombach; (3) breach of duty of loyalty against Eric Dombach; (4) breach of covenant not to compete against Eric Dombach; (5) common law unfair competition against all Defendants; (6) tortious interference with business relations against Deborah Dombach and Michael Cody; (7) civil conspiracy against all Defendants; (8) trademark infringement under the Lanham Act against all Defendants; (9) misappropriation of trade secrets under Pennsylvania Uniform Trade Secrets Act against all Defendants; and (10) preliminary and permanent injunction against all Defendants.

Plaintiffs' motion for preliminary injunction, also filed on January 4, 2010, seeks injunctive relief against Defendants based on Plaintiffs' claims of: (1) alleged misappropriation of trade secrets; (2) alleged breaches of non-disclosure and confidentiality agreements; and (3) alleged breach of Defendant Eric Dombach's duty of loyalty. (Pls.' Mem. Law in Supp. Mot. Prelim. Inj., pp. 11-20.) This case was assigned to the Honorable James Knoll Gardner. On January 19, 2010, Defendants filed a memorandum of law in opposition to the motion for preliminary injunction and a motion to dismiss Plaintiffs' Complaint.

On January 25, 2010, Judge Gardner issued an order referring this case for disposition subsequent to the parties' consent to exercise of jurisdiction by a Magistrate Judge. On January 26, 2010, I entered an order scheduling a telephonic scheduling conference for

February 2, 2010. Telephone conferences were held with counsel on February 2 and 3, 2010 and I issued an order on February 4, 2010 scheduling a preliminary injunction hearing for March 1, 2010.

On February 16, 2010, Plaintiffs filed an Amended Complaint asserting the following causes of action against the Defendants: (1) breach of non-disclosure agreement against Eric Dombach, Deborah Dombach, CSC and GLM; (2) breach of confidentiality agreement against Eric Dombach; (3) breach of duty of loyalty against Eric Dombach; (4) breach of contract against Eric Dombach; (5) common law defamation against all Defendants; (6) common law unfair competition against all Defendants; (7) tortious interference with prospective business relations Michael Cody; and (8) civil conspiracy against all Defendants. The Amended Complaint did not include claims for trademark infringement under the Lanham Act or a misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act.

Plaintiffs filed an Amended Motion for Preliminary Injunction along with their Amended Complaint on February 16, 2010. In the Amended Preliminary Injunction Motion, Plaintiffs seek preliminary injunctive relief for the following claims: (1) breach of a non-disclosure agreement; (2) breach of a duty of loyalty; (3) defamation; and (4) breach of an alleged oral non-compete agreement. (Pls.' Mem. Law in Supp. Am. Mot. Prelim. Inj., pp. 20-29.) On February 25, 2010, Defendants' response in opposition to Plaintiffs' motion for preliminary injunction was filed along with Defendants' proposed findings of fact and conclusions of law. On March 1, 2010, Plaintiffs' proposed findings of fact and conclusions of law were filed and the first day of the preliminary injunction hearing was held. The hearing resumed on March 2, 2010 and was scheduled to be continued on March 15, 2010, but on March 10, 2010, the hearing was

continued until May 24, 2010 with the consent of counsel. On May 19, 2010, I held a telephone conference with counsel. On May 24, 2010, the third day of testimony regarding the preliminary injunction hearing was taken. Final proposed findings of fact and conclusions of law were submitted by Plaintiffs on June 23, 2010 and by Defendants on July 7, 2010. On September 30, 2010, an Order was entered for Plaintiffs to file their Memorandum of Law in Support of the Amended Motion for Preliminary Injunction, which had been omitted from the February 16, 2010 filing of the Amended Motion. Plaintiffs filed the Memorandum of Law on September 30, 2010.

## II.  **PRELIMINARY INJUNCTION STANDARD.**

The United States Court of Appeals for the Third Circuit has recognized that "the grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the preliminary injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) the public interest favors such relief."granting of the injunction would be in the public interest. Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit has insisted that "the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." Adams v. Freedom Forge Corp., 204 F.3d 475, 487 (3d Cir. 2000). The Court has also stressed that "[b]efore granting a preliminary injunction, a district court *must* consider the extent to which the moving party will suffer irreparable harm without injunctive relief." Liberty Lincoln-Mercury, Inc. v. Ford Motor

Co., 562 F.3d 553, 557 (3d Cir. 2009)(quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 595 (3d Cir. 2002)(emphasis added.).

This Court has jurisdiction to grant a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully investigated and determined by strictly legal proofs and according to the principles of equity. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). Status quo refers to the "last, peaceable, noncontested status of the parties." Kos Pharm., 369 F.3d at 708.

As indicated above, irreparable injury must be present for an injunction to issue. "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a temporary restraining order or preliminary injunction." Instant Air Freight Co., 822 F.2d at 800 (citations omitted). In order to demonstrate irreparable harm, Plaintiffs must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Id. at 801. The availability of adequate monetary damages belies a claim of irreparable injury. Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). The temporary restraining order or preliminary injunction must be the only way of protecting Plaintiffs from harm. Id.

## III.    DISCUSSION.

Plaintiffs request the following injunctive relief:

1.    Defendants shall return all documents reflecting Plaintiffs' confidential and proprietary information and trade secrets.

9

2.     Defendants shall be prohibited from using Plaintiffs' confidential and proprietary information and trade secrets.

3.     Defendants shall be prohibited from competing with Plaintiffs in any way, including the employment of Eric Dombach.

4.     Defendants shall be prohibited from marketing or soliciting any products or services using Plaintiffs' confidential and proprietary information and trade secrets.

5.     Defendants shall be prohibited from claiming any relationship to any franchisor Plaintiff, multibrand business coaching franchisor, or in any way associating themselves with any FSBI brand.

6.     Defendants shall be prohibited from contacting any existing FSBI franchisee, employee, associate, agent, or representative.

7.     Defendants shall be prohibited from defaming and disparaging any FSBI brand, franchisee, employee, associate, agent or representative.

8.     Defendants shall transfer title to all work product to Plaintiffs, including the 2010 Buyer's Guide and various URL domain names.

**A.     Whether the Plaintiffs Lack Capacity to Bring Suit Under Pennsylvania Law.**

In Defendants' Memorandum of Law in Opposition to the Motion for Preliminary Injunction, they note that Pennsylvania statutory law requires a foreign business corporation to obtain a certificate of authority from the Pennsylvania Department of State before doing business in Pennsylvania. See Mem. Law in Opp'n. Mot., p. 14 (citing 15 Pa. C.S.A. § 4121(a)). Under

10

15 Pa. C.S.A. § 4141, a nonqualified foreign business corporation or a foreign business corporation that has not obtained the necessary certificate of authority to conduct business in the Commonwealth of Pennsylvania but that conducts business in the Commonwealth anyway is not permitted to maintain any action or proceeding in any court in the Commonwealth until the corporation has obtained a certificate of authority. 15 Pa. C.S.A. § 4141(a). This provision precludes a nonqualified foreign business corporation from maintaining an action in federal as well as state court. Aberle Hosiery Co. v. Am. Arbitration Ass'n., 337 F. Supp. 90, 92 (E.D. Pa. 1972).

Defendants have checked the Pennsylvania Department of State's website, which indicates that Plaintiff TES Franchising LLC has registered with the Pennsylvania Department of State and properly obtained a certificate of authority to operate within the Commonwealth. According to Defendants, except for TES Franchising, the Franchisor Plaintiffs are nonqualified foreign business corporations and are not permitted to maintain an action before this Court and not entitled to injunctive relief until they effect correct compliance with Pennsylvania's corporate registration statutes. Mem. Law in Opp'n Mot., pp. 14-15.

Defendants did not develop this argument at the three-day preliminary injunction hearing, and the record is devoid of information that would enable the Court to rule on this issue at this time. In addition, Plaintiffs can easily remedy this issue by complying with Pennsylvania's corporate registration statutes during the pendency of the litigation. See Dague v. Huddler, No. 07-5539, 2008 WL 4444266, at *6 (E.D. Pa. Oct. 2, 2008)(quoting Typh, Inc. v. Typhoon Fence Co. of Pa., Inc., 461 F. Supp. 994, 996-97 (D.C. Pa. 1978)(examining effect of failure to comply with 15 Pa. C.S.A. § 2104(A), predecessor statute to 15 Pa. C.S.A. § 4141(a)

and stating compliance during pendency of litigation is sufficient)). <u>Accord</u> <u>Salom Enterp., LLC</u> <u>v. TS Trim Indus., Inc.</u>, 464 F. Supp.2d 676, 680-81 (E.D. Mich. 2006)(discussing issue under Michigan registration statute). Thus, the Court will review Plaintiffs' Motion for Preliminary Injunction.

**B.    Plaintiffs' Claims for Relief.**

Plaintiffs requested preliminary injunctive relief in their initial motion based on claims for: (1) alleged misappropriation of trade secrets; (2) alleged breaches of non-disclosure and confidentiality agreements; and (3) alleged breach of Eric Dombach's duty of loyalty. However, in their Amended Motion for Preliminary Injunction, Plaintiffs set forth the following claims: (1) breach of a non-disclosure agreement; (2) breach of a duty of loyalty; (3) defamation; and (4) breach of an alleged oral non-compete agreement. Plaintiffs do not contend in their Amended Motion for Preliminary Injunction that breach of a confidentiality agreement, misappropriation of trade secrets or unfair competition are a basis for the requested injunction, therefore those claims will not be examined. Thus, the instant analysis is limited to the claims in Plaintiffs' Amended Motion for Preliminary Injunction and I apply the traditional test for preliminary relief with respect to each claim.

1.    <u>Alleged Breach of A Non-Disclosure Agreement</u>.

Plaintiffs contend that they are entitled to injunctive relief because Eric Dombach, Deborah Dombach, CSC and GLM breached a non-disclosure agreement ("NDA") that Eric Dombach executed on behalf of CSC with FSBI on February 6, 2009 . <u>See</u> Dkt. No. 74, p. 21. FSBI does business for a group of companies wholly owned by Third-Party Defendant Terry

Powell, and FSBI required that Eric Dombach execute the NDA prior to disclosure of information regarding the Plaintiff companies.  Pl. Ex. 17.

Plaintiffs note that the NDA provided that confidential information, trade secrets or proprietary information provided to CSC.  Its successor, assigns and personal representatives were to be held in trust and confidence and not used for any purpose other than that contemplated in the NDA without written consent.  Id.  Plaintiffs further contend that the non-disclosure obligations are perpetual in duration and absent written consent, the parties have no right to disseminate the confidential and proprietary information and trade secrets.  Id.  FSBI never granted consent for Defendants to use its confidential information, trade secrets or proprietary information for the Defendants' new businesses.

Plaintiffs contend that the Defendants have breached the NDA through publication of FSBI's unique discovery process in their eBook, using FSBI's confidential and proprietary information to provide franchisor services to individuals seeking to become business coaches, and publishing confidential internal information.  In addition, Plaintiffs contend that Defendants further breached the contract when they granted accesses to confidential and proprietary information and trade secrets to Michael Cody, a third party not subject to the NDA.

Defendants contend that the Plaintiffs are not entitled to injunctive relief for any alleged breach of the NDA, the Plaintiffs cannot enforce the NDA against Eric Dombach personally, the information disclosed to the Defendants is not within the scope of the NDA, and Eric Dombach's alleged breach of the NDA by publishing an internal e-mail in his 2010 Buyer's Guide does not constitute a breach of the NDA because the subject of the e-mail, the problems

with the AdviCoach brand and FSBI's efforts to fix the brand, were generally known within the industry, including by FSBI's competitors. (Prelim. Inj. Hr'g Tr. Vol. 1, 193:8-25, March 1, 2010). Defendants also contend that Eric Dombach sanitized the quotes from an internal e-mail to remove any reference to the identities of the speakers so there is no way for any reader to tell these statements refer to Advicoach and therefore he did not contravene the NDA. (Prelim. Inj. Hr'g Tr. Vol. 3, 117:25-118:11, May 24, 2010).

We agree with Defendants that there is insufficient evidence to show that Plaintiffs are likely to prevail on the merits of this claim. In order to prevail on this claim, Plaintiffs must prove: 1) the existence of a contract, including its essential terms; 2) a breach of duty imposed by the contract; and 3) resultant damages. Gorski v. Smith, 812 A.2d 682, 693 (Pa. Super. 2002). On the face of the NDA, certain categories of information are protected from disclosure. Paragraph Four of the NDA provides that there is no duty to hold confidential information previously known to CSC, generally known within the industry prior to the date of the Non-Disclosure Agreement, or information that becomes common knowledge in the industry after the Agreement is signed. (Pls.' Ex. 17).

Eric Dombach testified that information included in the 2010 Buyer's Guide regarding the discovery process in business coaching franchise sales does not describe a process unique to the Plaintiffs. Rather, the 2010 Buyer's Guide describes techniques and strategies that are well known in the industry, and are readily accessible to individuals and franchisors through public seminars, training sessions, private vendors, and public websites. (Prelim. Inj. Hr'g Tr. Vol. 1, 111:22-112:6, March 1, 2010). He testified that the term "discovery process" is used by multiple business coaching franchisors to describe their sales process. (Prelim. Inj. Hr'g Tr. Vol.

14

1, 120:24-121:6, March 1, 2010).

In addition, Plaintiffs' contention that Eric Dombach provides "franchisor services" using Defendants' confidential and proprietary information is refuted by the record. Eric Dombach testified that the services he provides to business coaches through The Coaches' Coach are based on his pre-existing copyrighted intellectual property that was incorporated into the <u>Ultimate Business Coaching Bible</u>. (Prelim. Inj. Hr'g Tr. Vol. 3, 21:11-23, May 24, 2010). He has been developing the materials included in the <u>Ultimate Business Coaching Bible</u> since 2005 and the <u>Ultimate Business Coaching Bible</u> represents nine years worth of research and development he conducted on how to be a successful business coach. (Prelim. Inj. Hr'g Tr. Vol. 3, 20:4-8, 22:15-24, May 24, 2010).

Eric Dombach also testified that he and Mr. Powell agreed that Dombach's pre-existing copyrighted intellectual property—the same materials that Dombach uses to coach his business coaching clients and are the source of the <u>Ultimate Business Coaching Bible</u>—would become the basis for a new AdviCoach Operations Manual. (Prelim. Inj. Hr'g Tr. Vol. 3, 87:3-20, May 24, 2010). Eric Dombach testified that he provided these materials to FSBI, which then incorporated them into AdviCoach's Operations Manual under Dombach's supervision and direction. (Prelim. Inj. Hr'g Tr. Vol. 3, 9:5-16, 13:21-22, May 24, 2010).

The Plaintiffs have not carried their burden of showing a breach of the NDA, specifically that the information currently used by Eric Dombach was not publicly available, previously known to him, or generally known within the business coaching industry prior to his affiliation with TES. (Prelim. Inj. Hr'g Tr. Vol. 3, 98:22-99:7, May 24, 2010).

In addition to limiting its scope to information either previously known to CSC or information generally known in the industry, the NDA is also limited in scope to information disclosed for the purpose of allowing FSBI to investigate the use of CSC's call center operations. (Pls.' Ex. 17). The information provided to Eric Dombach in his capacity as Executive Strategist for FSBI is arguably not subject to the protections of the Non-Disclosure Agreement. First, the date of the NDA, February 6, 2008, predates the first discussions between Eric Dombach and Terry Powell regarding Dombach's employment with TES. Further, Eric Dombach testified that the only information CSC received from FSBI regarding FSBI's investigation of CSC's call center operations occurred in a sales conference call between Eric Dombach and some of FSBI's regional developers. (Prelim. Inj. Hr'g Tr. Vol. 3, 112:4-9, May 24, 2010). During the conference call, CSC through Dombach learned of the identities of some of FSBI's regional developers and learned about some aspects of the regional developers' businesses. (Prelim. Inj. Hr'g Tr. Vol. 3, 112:4-9, May 24, 2010). Plaintiffs do not contend that Defendants have used or currently are using the information disclosed in the sales conference call for competitive purposes. Accordingly, the information shared during this single conference call cannot be the basis for granting the Plaintiffs preliminary injunctive relief.

Plaintiffs contend that Eric Dombach breached the NDA by disclosing the contents of e-mails between AdviCoach regional developers and Brian Miller that Terry Powell had forwarded to Eric Dombach on March 30, 2008. (Pls.' Supplemental Ex. 1; Pls.' Mem. of Law in Supp. of their Am. Mot. for Prelim. Inj. 21; Pls.' Supplemental Post-Hearing Proposed Findings of Fact and Conclusions of Law 20, ¶ 7). Neither the content nor purpose of Terry Powell's March 30, 2008 e-mail to Eric Dombach was related to FSBI's investigation of CSC's

call center operations. Instead, the March 30, 2008 e-mail was related to Eric Dombach

becoming Executive Strategist for FSBI and Eric Dombach received the e-mail one day after he

signed his Employment Letter of Intent – Agreement. (*See* Defs.' Ex. N). Mr. Powell's March

30, 2008 e-mail states:

> Eric
>
> [a]ttached are numerous e-mails and documents addressing what
> we did as a result of the BAI Summit Phase 1 held last Nov. 07, as
> well as items and documents in preparation for Phase 2 in April 08.
> Bill Cunningham BAI RD carry over from Tim/Mark days is our
> strongest critic and has been against the business coaching over
> consulting from the beginning, he has been a sore spot and has kept
> the new RD's confused about the direction, he will not be in
> Hartford in April.
>
> Terry

(Pls.' Supp. Ex. 1). At no point in his e-mail does Mr. Powell mention CSC or call center

operations. (Pls.' Supp. Ex. 1). Also, the additional e-mails included in Plaintiffs' Supplemental

Exhibit 1 (Bates Number S000002 – S000018) that discuss CSC and CSC's call center

operations are not the e-mails Mr. Powell attached to his March 30, 2008 e-mail. (Prelim. Inj.

Hr'g Tr. Vol. 3, 113:21-114:9, May 24, 2010). Instead, Terry Powell's March 30, 2008 e-mail

disclosed to Eric Dombach the extent of the problems with the AdviCoach brand and revealed

the concerns of AdviCoach's regional developers and franchisees. (Prelim. Inj. Hr'g Tr. Vol. 3,

116:19-117:11, May 24, 2010). Accordingly, Mr. Powell's March 30, 2008 e-mail to

Mr. Dombach is not within the scope of the Non-Disclosure Agreement.

Once FSBI had completed its initial investigation of CSC's call center operations,

CSC and FSBI entered into a service agreement whereby CSC provided call center services for

FSBI and its franchisees. (Prelim. Inj. Hr'g Tr. Vol. 3, 112:9-16, May 24, 2010). The Non-

Disclosure Agreement on which Plaintiffs base their request for an injunction was not part of the

service agreement.  (Prelim. Inj. Hr'g Tr. Vol. 3, 112:17-19, May 24, 2010).  Plaintiffs have not

offered any evidence regarding the service agreement between CSC and FSBI.  Instead, Plaintiffs

would have the Court believe that FSBI investigated the use of CSC's and then GLM's Call

Center Operations from February 6, 2008 until December 3, 2009, and that the NDA covers all

the information Eric Dombach received during that period.  Plaintiffs' interpretation of the scope

of the NDA is unsupported by the record and the preliminary injunction will be denied as to this

claim for breach of the NDA.

### 2.    Alleged Breach of Duty of Loyalty.

Plaintiffs' second claim in support of their Motion for Preliminary Injunction is

that Eric Dombach breached his duty of loyalty while an agent of FSBI from April 7, 2008

through December 3, 2009 and the consequences of that breach are continuing because Dombach

continues to utilize FSBI's information he obtained from 2008 through 2009 for his own

companies and in sales of the 2010 Buyer's Guide.  Pls.' Mem. Law in Supp. Mot. Prelim. Inj.,

pp. 17-21.  Plaintiffs contend that:

> while Pennsylvania law permits an agent to make arrangements to compete, it
> prohibits him from using confidential information peculiar to the employer's
> business and acquired therein, and it does not permit an agent, while still working
> for the principal, to make improper use of the principal's trade secrets or
> confidential information in order to compete with the principal.

Pl.'s Mem. Law in Supp. Mot. Prelim. Inj., p. 18, Pls.' Am. Mem. Law in Supp. Mot. Prelim.

Inj., p. 22 (citing Bro-Tech Corp. v. Thermax, Inc., No. 05-CV-2330, 2009 WL 2854891 (E.D.

Pa. Sept. 3, 2009).  Plaintiffs also note that, pursuant to Bro-Tech, an employee who usurps a

business opportunity from the employer, or in preparing to compete with the principal such as soliciting other for rival business may be liable for a breach of the duty of loyalty.  Id. (citing id.)

According to Plaintiffs, while Eric Dombach was an agent of FSBI, he began preparing to conduct a business designed to compete with Plaintiffs and began implementing competitive activities including but not limited to: (1) taking significant steps to recruit FSBI employees for his new company, specifically Mark Elson (Pls.' Ex. 5); (2) working in a competing coaching practice beginning at least in October of 2008 but appearing to have been continuous during his employment (Pls.' Ex. 25, "I began expanding my existing practice of coaching coaches in Q4 of 2008"); (3) writing an electronically available book, the 2010 Buyer's Guide which contains FSBI's confidential and proprietary information and trade secrets (Pls.' Ex. 6); (4) registering domain names for use in the new business; (5) developing a website to compete with FSBI; (6) seeking to divert business from FSBI during his agency; and (6) depriving FSBI of the economic benefit of its investment in Dombach.  Pls.' Am. Mem. Law in Supp. Mot. Prelim. Inj., pp. 23-24.

Plaintiffs also contend that Eric Dombach was hired to work full-time for FSBI, received substantial reimbursement for his work despite his claims in a December 3, 2009 letter about a myriad of perceived wrongs, and was not granted leave to conduct a competing business during his employment.  Nonetheless, Dombach engaged in creation of a book which was being offered for sale on-line as of December 29, 2009.  According to the Plaintiffs, Dombach himself describes on www.mycoachescoach.com that the 2010 Buyer's Guide contains insider information obtained as a result of his employment with FSBI.  Plaintiffs also contend that the electronically available book contains information that Eric Dombach did not and could not

obtain absent his employment with FSBI. According to Plaintiffs, although Eric Dombach had no knowledge of or experience with any of these franchisor activities, he now offers to sell this information to clients of his new business, and this misuse of FSBI's trade secrets is a breach of Eric Dombach's duty of loyalty to FSBI.

In addition to the above alleged breaches of Eric Dombach's breach of duty of loyalty, Eric Dombach also allegedly attempted to recruit Mark Elson, FSBI's Director of Franchise Systems, to work for his new business when they were still employed by FSBI. Dombach approached Elson in August of 2009, four months prior to the termination of Dombach's agency relationship with FSBI. According to Plaintiffs, the attempted recruitment of Elson is analogous to the prohibited attempts by agents to solicit customers for rival businesses and is a further violation of Dombach's duty of loyalty to FSBI which occurred when Dombach was still in an agency relationship with FSBI.

Plaintiffs note that Dombach took steps beyond mere preparation when he registered domain names to be used in his competing business and began the web and business design process on November 11, 2009 while he was still working as an agent for FSBI. This, according to Plaintiffs, was a violation of his duty of loyalty to FSBI.

Finally, Plaintiffs contend that Eric Dombach obtained Plaintiffs' "customer lists with e-mail addresses" from FSBI's computer system while he was an employee of TES (Pls.' Supp. Proposed Findings of Fact & Conclusions of Law ¶ 58) and that Eric Dombach "misused the FSBI systems when he e-mailed the franchisees within the system about his intention to terminate his relationship with FSBI, prior to informing FSBI of his resignation." (Pls.'

Proposed Findings of Fact & Conclusions of Law ¶ 78.)

In response to Plaintiffs' Amended Motion for Preliminary Injunction as to breach of loyalty, Defendants contend that: (1) FSBI was aware of and consented to Eric Dombach's continuing to coach business coaches; (2) the 2010 Buyer's Guide and the Ultimate Business Coaching Bible are not based on Plaintiffs' alleged confidential or proprietary information or alleged trade secrets; (3) Eric Dombach's contacts with Mark Elson do not constitute a breach of his duty of loyalty; and (4) Defendants are not using the email addresses of FSBI's franchisees and employees. Finally, Defendants contend that any duty of loyalty that Eric Dombach owed to TES and the other Plaintiffs expired when he terminated his employment relationship in December 2009. Without a current duty of loyalty to Plaintiffs, they argue that there is no threatened breach to preliminarily enjoin.

Defendants are correct in arguing that Plaintiffs have not presented any evidence that Eric Dombach or any of the other Defendants are using the email addresses of FSBI's franchisees and employees in any manner to compete against the Franchisor Plaintiffs. Moreover, Defendants argue that Eric Dombach's blast email prior to his resignation was not sent to compete with FSBI. Instead, the stated purpose in the email was to "communicate with you the reasons for my departure, especially since I have concerns that there may be misinformation or negative information concerning my departure." (Pls.' Ex. 26.)

There is a likelihood that the Plaintiffs may be able to prove that Eric Dombach breached his duty of loyalty to FSBI from April 8, 2008 through December 3, 2009. Despite meeting this burden of proof, this Court can find no threat of any immediate harm with respect to

Eric Dombach's breach of a duty of loyalty to FSBI, which duty ended when his employment or agency relationship ended in December, 2009. See Gilbert v. Otterson, 550 A.2d 550, 554-555 (Pa. Super. 1988)(in absence of valid and enforceable restrictive covenant, former employee permitted to compete with former employer after termination of employment). As such, the preliminary relief requested for this claim must be denied.

3.    <u>Defamation</u>.

In their Memorandum in Support of the Motion for Preliminary Injunction, Plaintiffs contend that they are entitled to injunctive relief based on allegedly defamatory statements that Eric Dombach and Michael Cody made about the franchisor Plaintiffs in the 2010 Buyer's Guide and in order to promote BAI doing business as The Coaches' Coach. (Pls.' Mem. Law in Supp. Mot. Prelim. Inj., pp. 26-27.) Plaintiffs contend that in the 2010 Buyer's Guide, Eric Dombach represents himself as a franchisor insider, discussing his work for a multi-brand franchisor and publishes a quote from a franchisee addressed to "Eric, " but that Dombach worked for only one franchisor during his career, FSBI's multi-brand franchises. See Pls.' Ex. 6, p. 26, Pls.' Exs. 7, 8. Plaintiffs contend that in the 2010 Buyer's Guide, the Defendants discuss FSBI in general and specifically AdviCoach Franchising, LLC when they make comments about multi-brand franchisors. See Pls.' Ex. 6, p. 26. Plaintiffs contend that the Defendants allege in the 2010 Buyer's Guide that "All information is based on publicly available Franchise Disclosure Documents, web sites, franchisee interviews and other forms of research and believed to be accurate" but Eric Dombach admits that he has not read the Franchise Disclosure Documents for any FSBI brand. See Pls.' Ex. 6 at 12, 35; E. Dombach Dep., p. 200, ll. 5-7. Plaintiffs next claim that Defendants make representations about AdviCoach in the 2010 Buyer's Guide,

specifically that Defendants misrepresent that AdviCoach has an upfront expense of $75,000 and that they gleaned the upfront expense information from www.entrepreneur.com when compiling price information on AdviCoach for the chart located on pages 12 and 25 of the 2010 Buyer's Guide. See E. Dombach Dep., pp. 199, ll. 22-24; 256, ll. 17-19, Pls.' Ex. 6 at 12, 35. Plaintiffs contend that www.entrepreneur.com does not show an upfront expense of $75,000 or higher for AdviCoach. Pls.' Ex. 40.

Plaintiffs also contend that the Defendants make representations in the 2010 Buyer's Guide that AdviCoach offers a money-back guarantee to its franchisees, but in reality, AdviCoach does not offer such a guarantee. See Pls.' Ex. 6 at 23. Plaintiffs also note that the Defendants state in the 2010 Buyer's Guide that it is a lie for a franchisor's employees or agents to tell franchise candidates that they cannot provide earnings claims, id., but Eric Dombach knows that it is not a lie for a franchisor's employees or agents to tell franchise candidates that they cannot provide earnings claims. E. Dombach Dep., p. 272, ll. 5-10. Finally, Plaintiffs contend that although it is not fraud for a franchisor not to make an earnings claim, Defendants imply in the 2010 Buyer's Guide that it is fraud for a franchisor not to make an earnings claim. E. Dombach Dep., p. 276, ll. 22-25; Pls.' Ex. 6 at 34.

In their Amended Memorandum of Law in Support of the Motion for Preliminary Injunction, Plaintiffs claim that:

Defendants have published numerous false and misleading representations in order to deter individuals from using [Plaintiffs'] services. Defendants repeatedly point to FSBI by description and circumstance. The misrepresentations are even more egregious in their maliciousness. Defendants, especially Dombach, know that the misrepresentations being made are false and contradicted by the very materials they allege were their sources for the information about Plaintiffs'

business operations, the Franchise Disclosure Documents and Dombach's own involvement in systems designed to assist franchisees and award franchises.

Defendants claim that Plaintiffs lie to their customers, that they do not care about their franchisees, that they are concerned only with the sale of franchises and not the revenue generated by franchisees, that they have committed fraud as a result of legal and acceptable business practices, and a laundry list of other defamatory claims about Plaintiffs. The lies about the Plaintiffs in the eBook (as enumerated in the Amended Complaint) are proven false by the evidence.

Plaintiffs are likely to prevail on the claim of defamation and the injunction should be granted.

Pls.' Am. Mem. Law in Supp. Mot. Prelim. Inj., p. 27.

To recover on a claim of defamation in Pennsylvania, the burden is on a plaintiff to establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. Weaver v. Lancaster Newspapers, 926 A.2d 899, 903 (Pa. 2007).

Defendants argue that the 2010 Buyer's Guide does not defame Plaintiffs. Defendants contend that Plaintiffs do not carry their burden of establishing the necessary elements of a defamation claim with respect to the allegedly defamatory statements they identify in the Amended Complaint, specifically that the allegedly defamatory statements apply to the Plaintiffs.

Defendants note that none of the alleged defamatory statements that Plaintiffs identify in their Amended Complaint identify Plaintiffs, with the exception of the comparison

chart on page 65 of the 2010 Buyer's Guide that identifies AdviCoach by name. (Am. Compl.,

¶¶ 209-211.) Defendants contend that the information provided on the comparison chart is

publicly available and illustrates the reasons for Eric Dombach and Michael Cody's

recommendation of AdviCoach as their "2010 Pick for the Best Business Coaching Franchise

Opportunity." Defs.' Final Proposed Findings of Fact, Conclusions of Law and Supplemental

Argument, p. 42. Defendants argue that, even if some defamatory meaning could be implied by

the statements in the 2010 Buyer's Guide, it is unlikely that a reader would understand that the

statements were intended to be applied to the Plaintiffs and if any implication can be drawn by

the reader, it is that AdviCoach is not one of the business coaching franchisors that engage in

conduct identified by Dombach and Cody, otherwise they would not recommend AdviCoach to

their readers. Id. at 43.

Defendants also refute the following statements identified by Plaintiffs as

defamatory: 1) "misrepresent that AdviCoach has an upfront expense of $75,000 or higher" (Pls.'

Proposed Findings of Fact and Conclusions of Law, ¶ 92); 2) Defendants misrepresent that

AdviCoach offers a money-back guarantee to its franchisees (Id.); 3) Defendants'

characterization that it is lying and fraud for some sales professionals in the industry to inform

franchisee candidates that they cannot provide earnings claims. (Id. at ¶¶ 97-100.)

As to the first alleged defamatory statement, that the upfront expense of $75,000

or higher is required by AdviCoach, Defendants contend that the source of this information is

two public websites, the International Franchise Association ("IFA") and

www.entrepreneur.com, both of which publish information directly from franchisors. Defs.'

Final Proposed Findings of Fact, Conclusions of Law and Supplemental Argument at 44 (citing

Prelim. Inj. Hr'g Tr. Vol 3, 147:23-148:1, May 24, 2010).   Defendants note that the IFA website lists the total investment for AdviCoach between $73,000 and $86,300.   Id. (citing Defs.' Ex. ZZZ.)  Plaintiffs do not challenge the accuracy of the total investment listed on the IFA website. Thus, Defendants are correct that under the current record, Plaintiffs fail to establish that the statements in the 2010 Buyer's Guide regarding the upfront expense to purchase an AdviCoach franchise were false.

As to the alleged defamatory statements in the 2010 Buyer's Guide regarding the alleged money-back guarantee, Defendants contend that the source of the information is FSBI's Career Assurance Program, which was sent out to all persons who expressed an interest in buying an AdviCoach franchise.  Eric Dombach testified that he learned of the FSBI Career Assurance Program from an AdviCoach franchisee whom he coached and who had purchased an AdviCoach franchise because of the Career Assurance Program.  Id. at 45 (citing Prelim. Inj. Hr'g Tr. Vol 3, 149:19-150:7, May 24, 2010).   Pursuant to the Career Assurance Program, if after 24 months, a franchisee is not meeting their income, lifestyle, wealth and equity goals, FSBI will return the franchisee's initial franchise investment by selling the franchise for the franchisee. Id. (citing Defs.' Ex. FFF.)   Defendants note that Plaintiffs do not refute that they offered this money-back guarantee.

The final allegedly defamatory statements by Defendants regard the practice of some sales professionals in the industry of informing franchisee candidates that they cannot provide earnings claims.  Id. (citing Pls.' Proposed Findings of Fact & Conclusions of Law ¶¶ 97-100.)  Plaintiffs contend that the Defendants have called this practice lying and fraud.  Id. (citing id.)  Defendants state that Eric Dombach and Michael Cody make no mention of Plaintiffs

26

when describing this practice in the <u>2010 Buyer's Guide</u>.  Defendants contend that the only

reference to a lie on the page of the <u>2010 Buyer's Guide</u> that Plaintiffs cite to is "[o]r my personal

favorite: 'Don't ask us how much the average franchisee earns because we can't tell you [by the

way, this is a bald-faced lie].  Instead, decide how much you want to make and go do it.'" <u>Id.</u> at

45-46 (citing Pls.' Ex. 6 at 23.)  According to Defendants, the <u>2010 Buyer's Guide</u> identifies the

practice by which franchisors voluntarily choose not to make an earnings claim in their Franchise

Disclosure Document submitted to the Federal Trade Commission and then inform potential

franchisees that they are not allowed to make earnings claims.  The 2010 Buyer's Guide states

"[f]ranchise sales reps are absolutely allowed to make earnings claims, as long as the franchisee

earning statistics have been honestly reported, and fully documented in the FDD.  Every year,

when preparing their Franchise Disclosure Document, franchisors must decide whether or not to

report earnings per franchisee in the FDD." <u>Id.</u> (citing Pls.' Ex. 6 at 33-34.)  As to this issue,

Eric Dombach testified:

> Q: Okay.  Looking at page 33, Bates numbered page 58, there's a grey box on the right-hand side of the page.
>
> A: Correct.
>
> Q: Can you read what it says in there?
>
> A: "Let's be 100 percent clear about this fact.  There are no laws that forbid franchisors from making earning claims."
>
> Q: And is that a true statement?
>
> A: It's true in the understanding of the FTC ruling on the matter, which is

franchisors may voluntarily choose not to provide an Item 19 disclosure, what used to be called in the former document structure of the UFOC, Uniform Franchise Offering Circular, it was called and [sic] earnings claim.  And they are not required to provide it.  If they opt not to provide it, then they are forbidden to make any earnings claim at all.

And the point of the chapter, the point to what this is highlighting is that in the franchise sales process it's often the case that the full explanation of why they are not able to provide earnings claims may not be provided to candidates, which is when they're asked how much can I earn as a franchisee, they say "I can't tell you, okay, because, you know, we're not allowed to make earnings claims."  What they don't go on to say is "We voluntarily chose not to make earnings claims."  And that's a – in the mind of a buyer I think that's an important distinction, understand that our franchise – and if it's a franchisor who's been in business an extended period of time, you know, there are many reasons why they might not provide earnings claims, but fundamentally it's a best practice evolving in franchising and there's a huge trend towards the push for franchisors to step up to the plate and provide earnings claims.


Q: And as it stands right now there's no legal requirement that they – that franchisors do make earnings claims –


A: Correct.


Q: Or make those disclosures on Item 19 of their –


A: They are not required to make the disclosure, but in the discussion with the franchisees they're also not clarifying –  and that's the point of this chapter – is they're not clarifying that voluntarily they're choosing not to.  And unless a prospective franchisee is versed in Federal Trade Commission regulation on franchising, it's a nuance they may not be aware of.

(Prelim. Inj. Hr'g Tr. Vol 1, 123:1-124:16, March 1, 2010).  Plaintiffs do not make clear the

defamatory nature of the statements regarding earnings claims in the 2010 Franchise Buyer's

Guide and, more importantly, Plaintiffs do not demonstrate the understanding by the recipient of

this information as intended to be applied to the Plaintiffs.  Accordingly, Plaintiffs have not

shown, at this juncture, the defamatory nature of this statement in the 2010 Franchise Buyer's

.

For purposes of the preliminary injunction, the Court can only be concerned with statements currently on the Defendants' webpages or in the 2010 Buyer's Guide which is accessed through those webpages. Any defamation or disparagement that was there in the past and has since been removed is properly remedied by a damages action and the Court cannot enjoin possible future defamation. See SNA, Inc. v. Array, 51 F. Supp.2d 542, 546 (E.D. Pa. 1999). Similarly, the Court cannot enjoin the dissemination of future issues of a publication because its past issues had been found offensive because to do so would constitute a prior restraint violative of the First Amendment. Id. at n.3 (citations and quotations omitted).

Plaintiffs may have some success proving that some of the statements made on the websites and in the 2010 Buyer's Guide defame or disparage AdviCoach or FSBI if Plaintiffs are able to point to particular statements and prove the required elements as to those particular statements. Plaintiffs have not successfully done so on the present record. Specifically, Plaintiffs have not established the fourth part of the test required to show defamation in Pennsylvania - the understanding by the recipient of the communication's defamatory meaning. If Plaintiffs do prove that some of the statements defame or disparage them, there will be an adequate remedy at law for damages if the statements are untrue. Thus, a preliminary injunction as to defamatory statements will not issue.

4.    Breach of An Alleged Oral Non-Compete Agreement.

Under Pennsylvania law, restrictive covenants are enforceable only if: (1) they are incident to an employment relationship or some other lawful agreement between the parties; (2)

the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (3) the restrictions imposed are reasonably limited in duration and geographic context. Opp'n to Am. Mot. for Prelim. Inj. At 47-48 (citing <u>Hess v. Gebhard & Co., Inc.</u>, 808 A.2d 912, 918 (Pa. 2002)).

Plaintiffs contend that they are entitled to injunctive relief based on an oral agreement that Eric Dombach entered into with Terry Powell when Eric Dombach transitioned from an employee of FSBI. (Pls.' Am. Mem. Law in Supp. Mot. Prelim. Inj., pp. 27-29.) According to Plaintiffs, Dombach requested to leave his employment with FSBI and offered to become an independent contractor. FSBI rejected that offer and instead offered to allow Dombach to become an independent contractor subject to his agreement to abide by the non-competition provisions franchisees are subject to (2 years and 10 miles from any FSBI franchisee). <u>Id.</u> at 28 (citing Pls.' Ex. 9, ¶ 48; Terry Powell Affid.) Plaintiffs contend that Dombach rejected that offer and countered with an offer to become an independent contractor subject to the non-competition requirements except as to his existing business of coaching individuals actively engaged in business coaching. <u>Id.</u> (citing <u>id.</u>, ¶ 49; Terry Powell Affid.) According to Plaintiffs, FSBI accepted that offer and agreed to allow Dombach to become an independent contractor subject to the non-competition covenants with the exception of existing business coaches coaching. <u>Id.</u> (citing <u>id.</u>) Plaintiffs contend that "in light of Dombach's prior competitive activities while an employee with FSBI,[2] and the violation of his non-competition

_____

[2] The prior competitive activities referred to by Plaintiffs are referenced in an email from Terry Powell to Eric Dombach on November 30, 2008. In the email, Powell documented that an AdviCoach franchisee brought to FSBI's attention on November 25, 2008 that a former CSC caller directed one of FSBI's franchisees to a website created by Dombach, www.thecoachescoach.com. Creation of the website was not approved in advance by FSBI management and FSBI's Conflict of Interest policy which Powell said Dombach agreed to by signing for his

agreement with the purchaser of his franchise,[3] FSBI would never have allowed Dombach to

_____

Employee Handbook required that anything that might be considered a conflict of interest was required to be brought in advance to Powell's attention. Powell stated:

> It is our belief this website was created in an attempt to actively market a business that would train competitors using similar methodologies to AdviCoach or any other of our brands. While I agreed to allow you to wind down some existing coaching engagements you had, I did not agree to you establishing a new portal to pursue additional coaching engagements with the competition. Further, training materials that are not in alignment with the present AdviCoach operating system should not be given to our franchisees. Continuing to operate this website will be problematic and cause frustration among current and prospective franchisees. Imagine how we would answer the question to a prospective franchisee that we have authorized you (on an ongoing basis) to train the competition to compete against us.
>
> . . . .
>
> Objectives/Solutions
> • It is our belief that the Coaches Coach website should be taken down as it is in direct competition with ADVICOACH® franchisees and will cause problems with prospective franchisees in validation.
> • Do not direct any AdviCoach franchisees to materials outside of the FSBI system without prior written approval by the CEO.
>
> You are to follow company guidelines and inform the CEO or management in advance of anything that could be construed as a conflict of interest. You agreed to abide by this policy when you became an employee. Policy is attached. Under the heading CONDUCT AND CONFLICT OF INTEREST.
>
> Actions:
> As outlined above these actions are not consistent with a member of the Executive Team. Should anything of this nature occur again, or should you fail to properly resolve the situation with the Coaches Coach website, you will be subject to disciplinary action up to and including termination of employment. I'm confident, however, you will take the appropriate action anc continue to be a valuable contributor to the FSBI Executive Team.

Pls.' Ex. 22, pp. 1-2.

_____

[3]      As evidence that Eric Dombach violated a non-compete agreement with the purchaser of his former company, Plaintiffs cite their Exhibit 24, an email from Eric Dombach to Terry Powell in which Dombach relates to Powell that he has secured an AdviCoach candidate who will be signing with FSBI shortly and who is from Chalfont, a northern suburb of Philadelphia, which is in the trade area in which Dombach is prohibited from competing with his former business, the Lancaster Coaching Practice ("LCP"). Dombach informed Powell that he intended to uphold his non-compete agreement with LCP. Dombach proposed the following two choices to Powell:

> 1) You choose not to award the franchise license in PA and we let sleeping dogs lie. Matt could be licensed to operate within New Jersey as his base state. He would need to be specifically prohibited from conducting business in the state of Pennsylvania until July 2010. Obviously, not convenient for him and could cost you the award.

continue as an independent contractor absent the consideration of a non-competition agreement."

Id. Further, Plaintiffs contend the following:

> [t]he entire issue of employment to independent contractor status was as the result of Dombach's intentional violation of a previous non-competition agreement. In light of the Employee Warning Notice, which specifically addressed Dombach's competitive activities, it is clear and reasonable that a finder of fact would find that FSBI would never have allowed Dombach to continue without the protection of a noncompete.
>
> . . . .
>
> Here, there is a valid oral contract which was bargained for and for which consideration was given, and the restrictions (especially in light of Dombach's history of improper violations of non-competition agreements) are reasonable. Absent the restrictions, Dombach would be able to do what he has done - create a business offering franchises to business coaches. This was the specific concern of FSBI when it required the agreement. The duration and geographic limitations are reasonable in light of the harm to Plaintiffs, and, in Pennsylvania, the burden is on the individual subject to the non-compete to prove that this duration and geographic extent are unreasonable.
>
> Plaintiffs are likely to prevail on the merits of this claim and injunction should be granted.

Pls.' Am. Mem. Law in Supp. Mot. Prelim. Inj., pp. 28-29.

In response, Defendants note that Plaintiffs do not identify which of multiple terms they have offered governs Eric Dombach's alleged covenant not-to-compete. In Plaintiffs'

---

2) I resign my post at FSBI effective 4/1/2009 and I don't participate in the March trainings if Matt is involved. I would then notify LCP that I have resigned my post at FSBI and that I have upheld and will continue to uphold my end of our agreements. You make the award and carry on without me. At that point, you will have invested !132,000 to save your investment in AdviCoach. You carry on with the amazing franchise system I've built for you and I'm back on my own. My website goes back up and I continue teaching the 5 Steps to Freedom and 21 Silver Bullets to coaches around the world. Maybe there would be other ways to keep me involved with FSBI after that. Since I can't be employed by TES in any way, we could form a co-owned separate entity and I would begin building the ERC brand in partnership with yourself and FSBI resources.

The ball is in your court.

Pls.' Ex. 24, pp. 1-2.

Amended Memorandum in Support of the Motion for Preliminary Injunction, Plaintiffs assert

that the temporal and geographic scope of the franchisee non-competition provisions that Eric

Dombach agreed to are two years and ten miles from any FSBI franchisee.  Id. at 28.  However,

in their proposed Findings of Fact and Conclusions of Law submitted on February 25, 2010,

Plaintiffs alleged that the terms of the covenant not to compete were contained in an April 29,

2009 email from Dombach to Powell.  (Pls.' Proposed Findings of Fact & Conclusions of Law,

¶¶ 59-62.)  In their Supplemental Proposed Findings of Fact and Conclusions of Law, Plaintiffs

do not reference the terms of Eric Dombach's covenant not-to-compete and do not clarify which

of the two sets of alleged terms they have previously offered governs the geographic and

temporal scope of the alleged covenant not-to-compete.  Defendants also note that Terry Powell

testified when asked specifically how long Dombach was not to compete with FSBI, "[A]s long

as he was under our employment and/or being compensated under [an] independent contractor

agreement, we had an oral, binding agreement with Mr. Dombach that he would not compete

with us."  Defs.' Final Proposed Findings of Fact, Conclusions of Law and Supp. Argument, p.

48 (quoting Prelim. Inj. Hr'g Tr. Vol 3, 274:8-13, May 24, 2010).

We agree with Defendants that, based on the above, Plaintiffs are attempting to

enforce an oral contract, the terms of which are unknown and which appears to expire upon Eric

Dombach's departure from FSBI.  Defendants note that Eric Dombach has maintained that he

never entered into an oral or written non-competition agreement with FSBI or any of its related

entities.  Id. at 49 (citing Prelim. Inj. Hr'g Tr. Vol 3, 128:2-5; 134:12-16, May 24, 2010).

Dombach admitted that the parties discussed the possibility of a covenant not-to-compete, but

maintained that he would not agree to a non-compete until he was satisfied that Terry Powell

would honor the promises he made to Dombach to get Dombach to join TES.  Id. (citing Prelim.

Inj. Hr'g Tr. Vol 3, 134:17-25, May 24, 2010).

Further, although Plaintiffs allege in their Amended Complaint that Eric Dombach

became an independent contractor concurrently with the execution of a covenant not-to-compete,

Plaintiffs did not introduce into evidence Dombach's alleged independent contractor agreement

nor did they provide any evidence regarding any alleged essential elements of the contract.

Instead, Plaintiffs rely on an email which Terry Powell acknowledged is not a binding agreement,

for the terms of Dombach's alleged covenant not-to-compete.  Id. (citing Am. Compl., ¶¶ 91-94;

Prelim. Inj. Hr'g Tr. Vol 3, 271:5-7, May 24, 2010).

Because Plaintiffs have not established that the restrictions in any agreement

between Eric Dombach and FSBI were reasonably limited in duration and geographic context,

Plaintiff's motion for preliminary injunction with respect to breach of an alleged oral non-

compete agreement must be denied.

**B.      Balance of Equities and the Public Interest.**

Plaintiffs contend that a preliminary injunction issued in this case will "stop

Defendants from their offending conduct of making defamatory misrepresentations and using

FSBI's confidential and proprietary information and trade secrets to market and sell products and

services in violation of a non-competition agreement and duty of loyalty."   Pls.' Am. Mem. Law

in Supp. Mot. Prelim. Inj. at 30.  Defendants contend in response, that if the Court issues

Plaintiffs' requested injunction, Defendants will suffer irreparable harm by being precluded from

earning a living in their chosen field in which they have developed their own intellectual property

and have excelled for the past eight years. Defendants also argue that if Plaintiffs prevail on their claims, there is no reason why money damages could not adequately compensate Plaintiffs.

Plaintiffs contend that a preliminary injunction will not adversely affect the public interest in promoting adherence to contractual obligations and promoting principals' ability to share knowledge with agents free from fear that the agents will misappropriate confidential and proprietary information and trade secrets or unlawfully compete with and defame them. In addition, Plaintiffs contend that the grant of injunctive relief will promote adherence to contractual obligations and preclude the unjust enrichment of those who intentionally breach their contractual obligations and act in a malicious and unlawful manner against others.

Conversely, Defendants contend that the public interest weighs against granting an injunction under the facts of this case because Defendants are engaged in a lawful business of coaching business coaches using Defendants' pre-existing intellectual property and not information that Defendants learned from Plaintiffs. Defendants further contend that they provide a great service to business coaches and prospective franchisees by publishing the 2010 Buyer's Guide and offering business coaching services to new and established business coaches including independent business coaches and franchisees. Defendants also contend that Eric Dombach's services inure to the benefit of Plaintiffs to the extent that his franchisee clients increase their revenue and thus their royalty payments to franchisors such as the Franchisor Plaintiffs.

Plaintiffs have not shown immediate irreparable injury with respect to their claims for breach of the non-disclosure agreement, breach of the duty of loyalty, defamation and breach

of an oral non-compete agreement.  Plaintiffs still have the opportunity to pursue those claims in

the instant lawsuit and perhaps, once discovery is completed, Plaintiffs will prevail on those

claims.  In the meantime, Plaintiffs have not shown that monetary damages will be an inadequate

form of relief.  Further, the public interest in adherence to contractual obligations will not be

adversely affected by a denial of preliminary injunction in this case, as Plaintiffs have, at this

juncture, failed to carry their burden of establishing need for a preliminary injunction.

## IV.    CONCLUSIONS.

1.    Plaintiffs can easily remedy their current non-compliance with Pennsylvania's

corporate registration statutes during the pendency of the litigation.

2.    At this time, there is insufficient evidence to show that Plaintiffs are likely to

prevail on the merits of their claim for breach of the Non-Disclosure Agreement between CSC

and FSBI.   The NDA is limited in scope to information disclosed for the purpose of allowing

FSBI to investigate the use of CSC's call center operations  (Pls.' Ex. 17) and the information

provided to Eric Dombach in his capacity as Executive Strategist for FSBI is arguably not subject

to the protections of the Non-Disclosure Agreement.  Plaintiffs' interpretation of the scope of the

NDA is presently unsupported by the record.

3.    Plaintiffs have not presented any evidence that Eric Dombach or any of the other

Defendants are using the email addresses of FSBI's franchisees and employees in any manner to

compete against the Franchisor Plaintiffs.  There is a likelihood that the Plaintiffs may be able to

prove that Eric Dombach breached his duty of loyalty to FSBI from April 8, 2008 through

December 3, 2009.  Despite meeting this burden of proof, this Court can find no threat of any

immediate harm with respect to Eric Dombach's breach of a duty of loyalty to FSBI, which duty ended when his employment or agency relationship ended in December, 2009.  See Gilbert v. Otterson, 550 A.2d 550, 554-555 (Pa. Super. 1988)(in absence of valid and enforceable restrictive covenant, former employee permitted to compete with former employer after termination of employment).  As such, the preliminary relief requested for this claim must be denied.

4.    Plaintiffs may have some success proving that some of the statements made on the websites and in the 2010 Buyer's Guide defame or disparage AdviCoach or FSBI if Plaintiffs are able to point to particular statements and prove the required elements as to those particular statements.  Plaintiffs have not successfully done so on the present record.  Specifically, Plaintiffs have not established the fourth part of the test required to show defamation in Pennsylvania - the understanding by the recipient of the communication's defamatory meaning. If Plaintiffs do prove that some of the statements defame or disparage them, there will be an adequate remedy at law for damages if the statements are untrue.  Thus, a preliminary injunction as to defamatory statements will not issue.

5.    Plaintiffs are attempting to enforce an oral contract, the terms of which are unknown and which appears to expire upon Eric Dombach's departure from FSBI.  Because Plaintiffs have not established that the restrictions in any agreement between Eric Dombach and FSBI were reasonably limited in duration and geographic context, Plaintiff's motion for preliminary injunction with respect to breach of an alleged oral non-compete agreement must be denied.

Plaintiffs have not shown immediate irreparable injury with respect to their claims for breach of the non-disclosure agreement, breach of the duty of loyalty, defamation and breach of an oral non-compete agreement. Plaintiffs still have the opportunity to pursue those claims in the instant lawsuit and perhaps, once discovery is completed, Plaintiffs will prevail on those claims. In the meantime, Plaintiffs have not shown that monetary damages will be an inadequate form of relief and Plaintiffs' Motion for Preliminary Injunction will be denied as to Plaintiffs' claims for breach of the non-disclosure agreement, breach of Eric Dombach's duty of loyalty, defamation and breach of an oral non-compete agreement.

An appropriate Order shall be separately entered.