# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| TES FRANCHISING, LLC, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| vs. | : | NO. 10-0017 |
| | : | |
| J. ERIC DOMBACH, et al., | : | |
| Defendants, | : | |
| | : | |
| vs. | : | |
| | : | |
| TERRY POWELL, et al., | : | |
| Additional Defendants. | : | |

HENRY S. PERKIN  NOVEMBER 24, 2010
UNITED STATES MAGISTRATE JUDGE

## MEMORANDUM

Presently before the Court is the Motion to Dismiss the Amended Counterclaims of Counterclaim Plaintiff J. Eric Dombach ("Dombach") filed by Counterclaim Defendants TES Franchising, LLC ("TES"), Advicoach Franchising, LLC ("AdviCoach"), Steven Schick, Business Partner Franchising, LLC ("BP") and ERC Franchising, LLC ("ERC"). See Document No. 52. The Amended Counterclaims subject to the instant Motion include: (1) infringement of copyright in violation of the Copyright Act, 17 U.S.C. § 101 et seq. against original Plaintiffs/Counterclaim Defendants TES, AdviCoach, Steven Schick, BP and ERC (Am. Countercl. ¶¶ 85-89); (2) breach of contract against TES (Am. Countercl. ¶¶ 90-98); (3) violation of the Pennsylvania Wage Payment and Collection Law, 42 P.S. § 260.1 et seq., against TES (Am. Countercl. ¶¶ 99-106); and (4) promissory estoppel against TES (Am. Countercl. ¶¶ 107-121). For the following reasons, the Motion to Dismiss will be denied.

I.      **PROCEDURAL BACKGROUND.**

On March 9, 2010, Defendants filed their Joint Answer with Affirmative Defenses to Plaintiffs' Amended Complaint and Counterclaims of Defendants Dombach, C. Michael Cody and Business Action, Inc. See Document No. 37. On April 16, 2010, Counterclaim Plaintiff Dombach filed his Amended Counterclaims against Counterclaim Defendants Terry Powell, AdviCoach Franchising, LLC ("AdviCoach"), TES Franchising, LLC ("TES"), Steven Schick, Business Partners Franchising, LLC ("BP"), ERC Franchising, LLC ("ERC") and Does 1 through 500.[1] See Document No. 47, pp. 36-55. On April 30, 2010, Counterclaim Defendants Terry Powell, Decor & You, Inc. and John Does 1 through 500 filed the instant Motion to Dismiss the Amended Counterclaims of Counterclaim Plaintiff Dombach. See Document No. 52. Counterclaim Plaintiff Dombach filed his Response to the Motion to Dismiss on May 17, 2010. See Document No. 54.

II.     **STANDARD OF REVIEW.**

A motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The motion to dismiss standard has been the subject of recent examination, culminating with the United States Supreme Court opinion Ashcroft v. Iqbal, 129 S.Ct. 1927 (2009). Following Iqbal, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice" to defeat a Rule 12 (b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic v. Twombly, 550 U.S. 544 (2007). The Third Circuit Court of Appeals applied the principles of

---

[1] The Amended Counterclaims are contained in Defendants' Amended Joint Answer with Affirmative Defenses to Plaintiffs' Amended Complaint and Counterclaims of Defendant J. Eric Dombach. See Document No. 47.

Iqbal in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), and articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12 (b)(6) motion to dismiss.

First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Id. at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court of Appeals and several district courts have noted that the pleading standards set forth in Twombly and Iqbal apply with equal force to crossclaims, counterclaims and third party complaints. SEPTA v. AECOM, USA, Inc., No. 10-117, slip op. (E.D. Pa. Nov. 18, 2010)(O'Neill, J.)(citing Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 256 n.13 (3d Cir. 2010)(applying the Iqbal pleading standard to crossclaims); Rocheux Intern. of N.J., Inc. v. U.S. Merch. Fin. Gr., Inc., — F. Supp. 2d —, 2010 WL 3833733, at *6 (D. N.J. Sep. 29, 2010) (noting that Iqbal and Twombly apply to counterclaims); Simon Prop. Gr., Inc. v. Palombaro, 682 F. Supp. 2d 508, 511 (W.D. Pa. 2010) (same); Miami Valley Fair Housing Ctr. v. Steiner & Assocs., Inc., No. 08-00150, 2010 WL 2631110, at *7 (May 13, 2010) (applying Twombly and Iqbal to third party complaint); Colon v. Blades, — F.R.D.—, 2010 WL 1731666, at *2 (D.P.R. Apr. 29, 2010) (same); Mottley v. Maxim Crane Works, L.P., No. 06-78, 2010 WL 1284433, at *2 (D.V.I. Mar 26, 2010) (Bartle, C.J.) (same); Source One Global Partners, LLC v. KGK Synergize, Inc., No. 08-7403, 2009 WL 2192791, at *2 (N.D. Ill. July 21, 2009) (same)).

## III. DISCUSSION.[2]

### A. Whether Dombach Has Stated a Claim for Infringement of Copyright in Violation of the Copyright Act, 17 U.S.C. § 101 et seq.

Counterclaim Defendants move for dismissal of Dombach's counterclaim for infringement of copyright in violation of the Copyright Act, arguing that Dombach's allegations are legal conclusions and not sufficient to state a claim for copyright infringement. The Copyright Act grants the owner of a copyright exclusive rights: (1) to reproduce the copyrighted work; (2) to prepare derivative works based upon the copyrighted work; and (3) to distribute copies of the copyrighted work to the public by sale or other transfer of ownership. 17 U.S.C. § 106. To show a claim of copyright infringement, a plaintiff must establish: "(1) the ownership of a valid copyright; and (2) unauthorized copies of original elements of the Plaintiff's work." Dun & Bradstreet Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Dombach alleges at Count I of his Amended Counterclaim that he is the author and copyright claimant of his *Silver Bullet Marketing System*[3] which is a registered copyright

---

[2] The facts are gleaned from the Amended Counterclaims and the extrinsic documents upon which they are based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For purposes of this motion, they are presented in the light most favorable to Counterclaim Plaintiff Dombach, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

[3] Dombach alleges that included in his copyright registration for *Silver Bullet Marketing System* are the following original business coaching programs: *The Marketing Machine, The 100% Sales Process* (including *Silver Bullet Call, Complementary Coaching Session ("CCS"), 5 Step Follow Up System, Sizzling Hot Bio, Overcoming the 11 Objections to Coaching, Profit Equation), The Coaching Program Agreement (Platinum, Gold, Silver, Bronze), The 5 Steps to Freedom™, The Stunning Seminars System, The 3 Business Pains (Time, Team, Money), The 21 Silver Bullets* (including *Time - Apprenticeship Plan, Operations & Training Manual, Time Management Plan, Comprehensive Exit Strategy); Team (Employee Acquisition Plan, Psychometric Profiling Process, Key Performance Indicators Measurement System, Lean Manufacturing Program, Performance Incentive Plan, Strategic Plan, Leadership Development Plan, Team Meeting Rhythm, Organizational Plan, Team Building System);* and *Money (Current Business Plan, Break-even Plan, Revenue and Profit Budget, Cash Gap Plan, Unique Selling Proposition & Guarantee, Sales Management System, Tactical Marketing Plan), Weekly Coaching Agenda, The 10 Commandments of Client Service, and The Million $ Firm Building System*. See Am. Countercl., ¶ 44.

5

with the United States Copyright Office, Registration No. TX 6-855-795.  See Am. Countercl., §§ 86-87.  Dombach attaches to his Amended Counterclaim at Exhibit C a copy of the Certificate of Registration issued by the United States Copyright Office effective January 4, 2008.  See Am. Countercl., Ex. C.  Dombach has therefore met the first requirement to show a claim of copyright infringement.

Dombach also alleges that "each of the Corporate Counterclaim Defendants and each of their affiliated franchisors and franchisees including Steven Schick and John Does 1 through 500 has violated and continues to violate Mr. Dombach's copyrighted works by, among other things, reproducing and distributing Mr. Dombach's copyrighted works without any license to do so, and by failing to give proper attribution to Mr. Dombach's original copyrighted works."  Id. at § 88.  Counterclaim Defendants contend that Dombach does not identify what works Plaintiffs have allegedly reproduced or distributed from the *Silver Bullet Marketing System* or to which Plaintiffs fail to give proper attribution.  As such, Counterclaim Defendants contend that Dombach's allegation is a legal conclusion that must be dismissed pursuant to Twombly and Iqbal.  Counterclaim Defendants also contend that Dombach's claim for copyright infringement must be dismissed because Dombach, while he was affiliated with TES, used his own copyrighted work for the benefit of the Corporate Counterclaim Defendants.  Mot. to Dismiss, p. 5.

Dombach responds by stating that his claim is not based on his *own* reproduction and distribution of his copyrighted materials during his association with TES.  Rather, his claim is based on the Counterclaim Defendants' unauthorized reproduction and distribution of his materials following termination of his relationship with TES and Terry Powell on December 3,

6

2009. Dombach asserts in paragraph 83 of his Amended Counterclaim that "[b]y letter dated January 4, 2010, Mr. Dombach responded to the December 23, 2009 cease and desist letter and expressly revoked any and all rights relating to Mr. Dombach's copyrighted works and other intellectual property." Am. Countercl., ¶ 83.

"A plaintiff establishes unauthorized copying by showing that the defendant 'had access to a copyrighted work' and 'that there are substantial similarities between the two works.'" Mon Cheri Bridals, Inc. v. Wen Wu, Nos. 09-1239, 09-1321, 2010 WL 2222497, at *5 (3d Cir. June 4, 2010) (quoting Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 561 (3d Cir. 2002)). Dombach's Counterclaim alleges he owns a copyright and that the Counterclaim Defendants have copied the copyrighted material and placed the copies into the market place.

At the pleading stage of the litigation, the Court must look to the pleaded facts and construe them in the light most favorable to Dombach as the Counterclaim Plaintiff. Although Dombach does not identify the manner or time at which infringement took place, assuming that Dombach's allegations are true, this conduct by the Counterclaim Defendants would be considered improper. The Court therefore finds that Dombach has sufficiently pled, at this stage of the litigation, a claim for copyright infringement. Accordingly, the Motion to Dismiss as to Infringement of Copyright in Violation of the Copyright Act, 17 U.S.C. § 101 et seq. is denied.

**B.** **Whether Dombach Has Stated a Claim for Breach of Contract.**

Dombach asserts in Count II of his Amended Counterclaims that TES breached an

Employment Agreement, identifying the Agreement as the March 29, 2007[4] Offer Letter at Exhibit A of the Amended Counterclaims and the Employment Letter of Intent - Agreement dated March 29, 2008 at Exhibit B of the Amended Counterclaims. Based on Dombach's reference to Exhibit B of his Amended Counterclaims, Counterclaim Defendants discern that Dombach's use of the term "Employment Agreement" equals the Employment Letter of Intent - Agreement. Mot. to Dismiss, p. 7. Counterclaim Defendants contend that the Employment Letter of Intent - Agreement is a framework for *future* negotiations and a *future* contract because it lacks the necessary specificity of terms required in a valid contract, it addresses *future* negotiations and contracts based on those negotiations and it fails to identify necessary terms such as performance obligations and benchmarks upon which Dombach's compensation, bonus and professional trajectory depend. Id. at 7-8. Thus, they contend that the Motion to Dismiss should be granted as to the Counterclaim for breach of contract.

Attached to the Counterclaim at Exhibit A is an Offer Letter from Terry Powell dated March 29, 2007 offering Dombach a full-time position as Executive Strategist as of April 7, 2008 at a specific bi-weekly salary and indicating that Dombach would be sent an Additional Compensation Plan covering the details of his bonus commission plan under separate cover. See Counterclaim, Ex. A. The March 29, 2007 letter indicates that the Executive Strategist position is an at-will position under Connecticut law. Id. The last paragraph on page two of the letter states the following: "I accept your offer of employment. This letter substantially represents the commitments that have been made concerning my employment" and page two was executed by

---

[4] It appears that the Offer Letter of Agreement should have been dated March 29, 2008 because it was executed by Dombach on March 29, 2008.

Dombach on March 29, 2008.

Exhibit B to the Counterclaim is a document entitled "Employment Letter of Intent - Agreement," the document that Dombach alleges supplied the terms and conditions of his employment, which was also executed by both Terry Powell and Dombach on March 29, 2008. See Counterclaim, Ex. B. This Agreement provides that Dombach will receive a "performance bonus to be via [his] bi-weekly payroll in the second paycheck following the end of each quarter." Id., p. 2. The bonus is comprised of: "(a) Franchise Awards - 2% on first $2.5 million; 5% above $2.5 million; (b) Royalty Share from E-Myth - 10% of FSBI revenue share; © Royalty Share from business-to-business services - 10% of FSBI revenue share." Id.

To state a claim for breach of contract in Pennsylvania, three elements are necessary: "(1) the existence of a contract, including its essential terms; (2) a breach of the duty imposed by the contract; and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225-226 (3d Cir. 2003)(quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053 (Pa. Super. 1999)). Counterclaim Defendants contend that the Offer letter was a conditional offer of employment and at will employment is not under an employment contract, citing a Connecticut case stating that "an employer and employee have an at-will employment relationship in the absence of a contract to the contrary." Mem. Law in Supp. Pls.' Mot. Dismiss, p. 7 (citing Cwelinsky v. Mobil Chem. Co., 837 A.2d 759, 768 (Conn. 2004)).

Counterclaim Defendants also contend that this Court should question the plausibility of the claims. They contend that it is not plausible that Dombach, having negotiated the terms of his agreement with TES, knowing that he would have to "diminish his time commitments to his existing competitive companies CSC and Business Action, Inc." (Am.

Countercl., ¶ 23), fearful of losing "ownership and control of his secrets and intellectual property" (Id. at ¶ 26), and "concern[] for the health of his competitive companies" (Id. at ¶ 28), knowing how much CSC needed to meet in revenues (Id. at ¶ 29) and expecting to make "more money as an employee of TES than he would ever make on his own" (Id. at ¶ 22), that he would accept an offer for "at will" employment and execute a letter of intent that did not contain any assurance he claims to have received from TES or provide any information about the obligations and benchmarks necessary to achieve his future compensation schedule. Mem. Law in Supp. Mot. Dismiss, p. 8. Even less plausible, according to Counterclaim Defendants, is that Dombach would intend such a document to be a binding contract. Id. Thus, Counterclaim Defendants contend that Dombach's failure to allege facts to support his allegation that the Letter of Intent and Offer Letter of Employment created a contract other than repeatedly using the term "Employment Agreement" and assertion of an implausible sequence of events to support his claim must result in dismissal of Count II of the Amended Counterclaims.

In response, Dombach contends that his at-will employment does not bar him from asserting contractual rights arising out of his employment, citing Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710 (Pa. Super. 2005), wherein the Pennsylvania Superior Court stated that the "Appellant's status as an at-will employee is irrelevant to whether a contract existed to provide compensation during the term of his employment. Although Appellant could have been terminated at any point, and in fact was terminated, if the evidence so establishes, he would be entitled to receive the agreed-upon compensation earned prior to his termination." Id. at 716. In response to the Counterclaim Defendants' argument that the Employment Letter of Intent - Agreement was merely a framework for a future contract, Dombach notes that Counterclaim

Defendants' argument completely disregards the terms of the Employment Letter of Intent - Agreement which provides the schedule on which his quarterly performance bonus would be paid.

Moreover, Dombach attaches to his Amended Counterclaims at Exhibit E an email exchange between Dombach and Terry Powell from July 16, 2008 through July 18, 2008 in which Dombach questions the direct deposit of his performance bonus for the June 2008 payroll. In his July 16, 2008 email, Dombach cites the following: "Our agreement says: 'Performance bonus to be via your bi-weekly payroll in the second paycheck following the end of each quarter.'" See Am. Countercl., Ex. E, p. 3. This language is taken directly from page two of the Employment Letter of Intent - Agreement, and through this email exchange, was modified in July of 2008 to state "Performance bonus to be via your bi-weekly payroll in the last pay check of the first month following the end of each quarter." Id. at 1. Dombach asked Powell that if he agreed with the language change to email a revised version of the agreement to Dombach. Powell responded "[t]his e-mail will serve as our clarification to the language, thanks." Id.

There is sufficient clarity within these documents as to Dombach's bi-weekly consulting salary/base; his waiver of medical, group life and short and long-term disability insurance; his full-time employment beginning on April 7, 2008 as an Executive Strategist; when his performance bonus was to be paid; the amount of his vacation in 2008 and 2009 and beyond; and the amount of travel required by this position. See Am. Countercl., Exs. A, B. Moreover, the conduct of Dombach and Terry Powell and FSBI following April of 2008 shows that the parties manifested an intention to be bound by the terms of both the Offer Letter of Employment and Employment Letter of Intent - Agreement. Helpin v. Trs. of the Univ. of Pennsylvania, 969

11

A.2d 601, 610-11 (Pa. Super. 2009). Taking the information provided in the light most favorable to Dombach as the non-moving party, he has set forth sufficient facts regarding the specificity of the contractual relationship to warrant denial of the motion to dismiss.

> C. **Whether Dombach Has Stated a Claim for Violations of the Pennsylvania Wage Payment and Collections Law.**

The purpose of the Pennsylvania Wage Payment and Collection Law is to protect individuals who have earned wages for which the employer has failed to pay. To state a claim under the WPCL, the plaintiff must plead that there was an actual employment relationship, that wages were earned, and that the Plaintiff demanded that the wages be paid. See 42 P.S. § 260.9a. The WPCL allows for payment of wages and benefits "vested by expenditure of time and effort." Id.

Dombach specifically pleads that he earned the 2008 bonus and the language on which he bases his claim is the language of the performance bonus in the Employment Letter of Intent - Agreement, at Exhibit B, page two of the Amended Counterclaims. That language specifically states the following:

> Performance bonus to be via your bi-weekly payroll in the second pay check following the end of each quarter
>
> > a. Franchise awards (BAI, TES, BP): 2% on first $2.5 Million; 5% above $2.5 Million
> > b. Royalty share from E-Myth (BAI, TES): 10% of FSBI revenue share (e.g. 27k of 3M)
> > c. Royalty share from B2B services (BAI, TES, BP): 10% of FSBI revenue share (e.g. 27k of 3M)

Am. Countercl., Ex. B, p. 2. Dombach alleges the following in his Amended Counterclaims:

> 64. Despite Mr. Dombach's success in improving the performance of the FSBI family of brands, TES and Mr. Powell defaulted on their acknowledged obligation

12

to pay Mr. Dombach as agreed, including, without limitation, by failing to pay Mr. Dombach's performance bonus for the third quarter of 2008.

65. By email dated July 17, 2008, Mr. Powell affirmed that Mr. Dombach's quarterly bonuses would be paid via the bi-weekly payroll in the second pay period of the month following the end of each quarter. For the third quarter of 2008, Mr. Dombach's bonus was to be processed with his payroll deposit on October 22, 2008.

66. A true and correct copy of Mr. Powell's July 17, 2008 e-mail with Mr. Dombach's response is attached hereto as **Exhibit E**.

67. Notwithstanding the acknowledged obligation to pay Mr. Dombach his third quarter bonus, Mr. Powell informed Mr. Dombach by e-mail dated October 4, 2008 that he would not receive a bonus for the third quarter of 2008.

68. A true and correct copy of Mr. Powell's October 4, 2008 e-mail is attached hereto as **Exhibit F**.

69. Under the method of calculation agreed to [by] the parties in the Employment Agreement, Mr. Dombach was entitled to and had earned a bonus of approximately $15,627.00 for the third quarter of 2008.

70. In response to Mr. Powell's October 4, 2008 e-mail, Mr. Dombach offered to convert the amounts due for his third quarter bonus into equity pursuant to Mr. Powell's agreement with Mr. Dombach in 2008. For security of the quarterly bonus payment, Mr. Dombach also requested that Mr. Powell and TES sign a promissory note in an amount equal to the third quarter bonus. Mr. Powell refused Mr. Dombach's offer and request.

100. Pursuant to the terms of the Employment Agreement, Mr. Dombach had a contractual right to a bonus for the third quarter of 2008.

101. Mr. Dombach's contractual right to a bonus for third quarter 2008 accrued on October 1, 2008, prior to Mr. Powell informing Mr. Dombach that he would not receive a bonus. Thus, Mr. Dombach had already earned his third quarter bonus prior to Mr. Powell's October 4, 2008 e-mail.

102. Under the method of calculation agreed to [by] the parties in the Employment Agreement, Mr. Dombach was entitled to and earned a bonus of $15,627.00 for the third quarter 2008.

103. Mr. Dombach was also entitled to other compensation under his

> Employment Agreement that he was not paid by TES.
>
> 104. The failure to pay Mr. Dombach the bonus he earned and the other compensation to which he was entitled to constitutes a violation of Pennsylvania's Wage Payment Collection Law, 43 P.S. § 260.1, et seq.
>
> 105. Pursuant to 43 P.S. § 260.10, in addition to the actual unpaid compensation to which Mr. Dombach was entitled, including, without limitation, a quarterly bonus of $15,627.00, Mr. Dombach is entitled to liquidated damages equal to 25% of the total amount of unpaid wages due. These liquidated damages include an additional $3,906.75 on the unpaid quarterly bonus alone.
>
> 106. Pursuant to 43 P.S. § 260.9a(f), Mr. Dombach is entitled to an award of reasonable attorney's fees from the defendants.

Am. Countercl., pp. 46-47, 51-52.

Counterclaim Defendants seek to dismiss Dombach's Amended Counterclaim against TES for violations of Pennsylvania's Wage Payment and Collections Law ("WPCL counterclaim") because Dombach has "failed to allege any supportable facts upon which [he] was owed a bonus in October 2008." Mem. Law in Supp. Mot. Dismiss, p. 10. Counterclaim Defendants also contend that Dombach "do[es] not allege any other grounds for violation of the Pennsylvania Wage Payment and Collection Law other than this bonus." Id. In the absence of evidence regarding the method of calculating the purported performance bonus and whether Dombach achieved the requisite performance levels to qualify for a bonus, Counterclaim Defendants contend that Dombach's WPCL counterclaim must be dismissed.

Dombach argues, in response, that he has alleged he was entitled to a quarterly performance bonus for the third quarter of 2008 pursuant to the terms of the Employment Letter of Intent - Agreement. Am. Countercl., ¶¶ 38, 42, 100. According to Dombach, FSBI's performance, including revenues from franchise awards and royalties from "E-Myth" and "B2B

services" dictates the size of his performance bonus, and Counterclaim Defendants' arguments regarding the size of his bonus and whether he achieved the requisite performance levels do not challenge the legal sufficiency of Dombach's WPCL counterclaim. Dombach alleges that the Counterclaim Defendants are attempting to require him to plead evidence regarding the Counterclaim Defendants' defenses to his claims. Finally, Dombach argues that Counterclaim Defendants' argument that Terry Powell's October 4, 2008 email to Dombach announcing the need to cut Dombach's third quarter performance bonus is really referring to a restructured compensation plan requested by Dombach in June 2008. In effect, according to Dombach, Counterclaim Defendants argue that Dombach is basing his WPCL counterclaim on an agreement that was subsequently modified by the parties and Dombach has failed to plead facts related to the modified bonus structure, which is a factual defense to Dombach's claim which is not challenging the legal sufficiency of Dombach's claims as pled.

As noted in Section B, *supra*, Exhibit E of the Amended Counterclaims is an email exchange between Dombach and Terry Powell from July 16, 2008 through July 18, 2008 in which Dombach questions the direct deposit of his performance bonus for the June 2008 payroll. In his July 16, 2008 email, Dombach cites the following: "Our agreement says: 'Performance bonus to be via your bi-weekly payroll in the second paycheck following the end of each quarter.'" See Am. Countercl., Ex. E, p. 3. This language is taken directly from page two of the Employment Letter of Intent - Agreement, and through this email exchange, was modified in July of 2008 to state "Performance bonus to be via your bi-weekly payroll in the last pay check of the first month following the end of each quarter." Id. at 1. Dombach asked Powell that if he agreed with the language change to email a revised version of the agreement to Dombach. Powell

15

responded "[t]his e-mail will serve as our clarification to the language, thanks." Id. Exhibit F of the Amended Counterclaims is another email exchange between Terry Powell and Dombach. An email sent from Terry Powell on August 3, 2008 states "Additionally I want to thank you for the letter you sent me in June prior to your vacation, it has helped me see that you were right, we do need to restructure the comp plan as it is slanted in a manner that may be counterproductive to driving the results that I know you can accomplish with the alignment of the Team as we develop FSBI to deliver on the equity position you will undoubtedly earn and will be well deserved. We will address this as we go through the process over the coming weeks or months as need be." Am. Countercl., Ex. F at 2-3. That email was followed by one from Terry Powell to Dombach dated October 4, 2008 which contained the following:

> It is not economically feasible for FSBI to continue with your bonus structure as the majority of it was based on Franchise Fees (97%) and they have not gone up beyond the levels previously accomplished, . . . The primary impact we were counting on to offset us was based on increased royalty streams from B2B and Awards, that has not taken root enough to warrant the investments to date and it seems even you have cut back your projections of late (see your projections attached from July and Sept.).
>
> The bottom line is that you along with the rest of us we are going to need to adjust our comp expectations for the 3rd qtr to fit the reality of the revenue short fall, economic crisis of late on Wall Street, nonexistent credit market, declining real estate values and our own lack of abilities to turn the tide as quickly as we had expected on B2B.
>
> All of these factors have resulted in a temporary need to cut ALL expenses including your bonus structure and other immediately. As you may recall the caveat to our comp plan was that we needed to meet or exceed our performance objectives with your addition to the team, while I remain optimistic the fact that expenses outweigh revenues can no longer be ignored.
>
> The good news is that even with what we will need to do for the rest of 2008 you will still be the highest compensated staff member with the shortest time in.

Id. at 1-2. Taking the facts in the light most favorable to Counterclaim Plaintiff Dombach, as the non-moving party, and accepting them as true with all reasonable inferences drawn in his favor, his contentions in the Amended Counterclaim and in Exhibits A, B, E and F show that Dombach has met the standards under Iqbal and Twombly and Counterclaim Defendants' motion to dismiss must be denied as to Dombach's WPCL claim.

      **D.**      **Whether Dombach Has Stated a Claim for Promissory Estoppel.**

The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 717 (Pa. Super. 2005)(citing Shoemaker v. Commonwealth Bank, 700 A.2d 1003 (Pa. Super. 1997)). A claimant must aver the following to maintain a promissory estoppel action: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." Id. at 717-718 (citing Shoemaker, 700 A.2d at 1006; see also Crouse v. Cyclops Indus., 560 Pa. 394, 403, 745 A.2d 606, 611 (2000) (noting that elements of promissory estoppel claim sound in contract for purpose of determining applicable statute of limitations)).

Counterclaim Defendants seek to dismiss Dombach's amended counterclaim against TES for promissory estoppel on the basis that Dombach makes numerous legal conclusions to support his claim that Terry Powell made promises to him, but Dombach fails to allege any facts that support these conclusions. Dombach asserts that the Counterclaim Defendants' argument is without merit because paragraphs 109 through 114 of the Amended Counterclaims allege facts that Mr. Powell made a statement or representation to Dombach and

17

state the statement or representation with specificity. According to Dombach, the existence of the term "promise" in these allegations does not convert these factual allegations into legal conclusions. Dombach alleges the following in his Counterclaim:

> 109. Mr. Powell promised Mr. Dombach that the total value of his compensation, including, without limitation, cash bonuses and equity, would exceed $250,000 in 2008, $500,000 in 2009, $800,000 in 2010, and $1.2 million in 2011.
>
> 110. Mr. Powell also promised to structure an award of phantom stock equity to Mr. Dombach in 2008 as well as severance benefits.
>
> 111. Further, Mr. Powell promised that whatever portion of Mr. Dombach's total compensation was not paid in equity would be paid in cash.
>
> 112. To alleviate Mr. Dombach's concerns for the health of his competitive companies, in their recruiting conversations, Mr. Powell promised that they would drive enough revenue to Mr. Dombach's company, CSC, to more than compensate for any revenue Mr. Dombach and CSC would lose as a result of Mr. Dombach becoming employed by Mr. Powell and TES.
>
> 113. Mr. Powell promised to drive revenues to Mr. Dombach and CSC of at least $23,000 in 2008, at least $48,000 in 2009, and at least $50,000 every year after that.
>
> 114. Finally, Mr. Powell promised Mr. Dombach a future as CEO of the companies making up the FSBI family of franchise brands and the opportunity to eventually purchase these companies outright from him.

(Am. Countercl. ¶¶ 109-114.) Dombach alleges that Terry Powell made promises regarding the terms and conditions of his employment with TES including his compensation. In relying on these promises, Dombach gave up other business opportunities, including continuing to operate on a full-time basis his competitive companies Coach Success Center, LLC and Business Action, Inc.

Promissory estoppel is "an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their

18

contracts in writing." Iversen Baking Co. v. Weston Foods, 874 F. Supp. 96, 102 (E.D. Pa. 1995); see also Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 717 (Pa. Super. 2005).

The elements of promissory estoppel are "(1) misleading words, conduct or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) no duty of inquiry on the party seeking to assert estoppel." Luther v. Kia Motors Am., Inc., 676 F. Supp.2d 408, 421 (W.D. Pa. 2009)(quoting Thomas v. E.B. Jermyn Lodge No. 2, 693 A.2d 974, 977 (Pa. Super. 1997)). The Third Circuit Court of Appeals has concluded there can be no justifiable reliance without an express promise. Id. (citing KSM Assocs. v. ACS State Healthcare, LLC, CA No. 05-4118, 2006 WL 1308267, *2, 2006 U.S. Dist. LEXIS 28288, *5-*6 (E.D. Pa. May 11, 2006)(citing C & K Petroleum Prods., 839 F.2d 188, 192 (3d Cir.1988)(promissory estoppel would be "rendered meaningless" if a plaintiff were allowed to maintain such an action based on the alleged existence of "a broad and vague implied promise."))). To succeed on a promissory estoppel claim, the plaintiff must establish that the action he took "amounted to a substantial change of position." Id. at 422 (quoting Ankerstjerne v. Schlumberger Ltd., 155 Fed. App'x 48, 51 (3d Cir. 2005)(quoting Kaufman v. Mellon Nat'l Bank and Trust Co., 366 F.2d 326, 332 (3d Cir.1966))). If the plaintiff's actions were based on his own will and judgment rather than the defendant's representations, the claim for estoppel cannot survive. Id. (citing Josephs v. Pizza Hut of America, Inc., 733 F. Supp. 222, 227 (W.D. Pa. 1989)(internal citations omitted)).

"Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel." Isobunkers, L.L.C. v. Easton Coach Co., No. 09-879, 2010 WL 547518, at *4 (E.D. Pa. Feb. 9, 2010)(citing Carlson v. Arnot-Ogden Mem'l. Hosp.,

19

918 F.2d 411, 416 (3d Cir.1990)). Promissory estoppel is generally invoked where the elements for formation of a contract have failed, but justice nonetheless requires judicial enforcement of one party's promise to another. Carlson, 918 F.2d at 416. Where an express contract governs the relationship of the parties, however, "a party's recovery is limited to the measure provided in the express contract." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987).

In this case, it is impossible to say whether Dombach will recover from the Counterclaim Defendants for breach of contract. Accordingly, Dombach asserts a promissory estoppel claim based on alleged promises made to him by Terry Powell. Dombach succeeds in alleging that Terry Powell made promises that he should have reasonably expected would induce action or forbearance on the part of Dombach, Dombach took action and gave up other business opportunities in reliance on the promises and injustice can be avoided only by enforcing the promise. The Court concludes that Dombach has stated a plausible claim for promissory estoppel in accordance with principles established by the Supreme Court in Twombly and Iqbal and the Motion to Dismiss must be denied as to the promissory estoppel claim.

## IV. CONCLUSION.

For all of the foregoing reasons, the Court finds that Defendant/Counterclaim Plaintiff Dombach has stated claims for copyright infringement, breach of contract, breach of Pennsylvania Wage Payment and Collections Law and Promissory Estoppel. As such, Plaintiffs/Counterclaim Defendants' Motion to Dismiss the Counterclaims of Dombach is denied in its entirety.

An appropriate Order follows.